GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

*Attorneys for Plaintiff Nicholas Crihfield*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS CRIHFIELD, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| CYTRX CORPORATION, STEVEN A. KRIEGSMAN, and JOHN Y. CALOZ, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Nicholas Crihfield ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by CytRx Corporation ("CytRx" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by CytRx; and (c) review of other publicly available information concerning CytRx.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that acquired CytRx securities between November 18, 2014, and July 11, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     CytRx is a biopharmaceutical research and development company specializing in oncology.   One of the Company's primary trial drugs is "aldoxorubicin."

3.     On November 18, 2014, CytRx announced that the United States Food and Drug Administration ("FDA") placed CytRx's clinical trials for aldoxorubicin on a partial hold in response to a patient death.

4.     On December 3, 2014, the Company issued a press release entitled "CytRx Receives Written FDA Communication Regarding Partial Clinical Hold for Aldoxorubicin Clinical Trials."   Therein, the Company, in relevant part, stated "CytRx currently believes that the partial hold issue will be expeditiously resolved

---

[1] "Defendants" refers collectively to CytRx, Steven A. Kriegsman, and John Y. Caloz.

1   and that enrollment rates and timelines for its ongoing trials will remain materially

2   unchanged, subject to FDA timing."

3       5.      On January 20, 2015, CytRx announced that the FDA removed the

4   clinical hold.

5       6.      On July 11, 2016, CytRx issued a press release announcing the results

6   of the Company's Phase 3 clinical trial of aldoxorubicin compared to investigator's

7   choice therapy in patients with relapsed or refractory soft tissue sarcomas ("STS").

8   Therein, the Company disclosed that "the study did not show a significant

9   difference between aldoxorubicin and investigator's choice therapy for

10   [progression free survival] . . . ."  Moreover, CytRx disclosed that a partial clinical

11   hold in November 2014 led to insufficient follow-up for nearly two-thirds of

12   patients who entered the Phase 3 study after the hold was resolved and enrollment

13   resumed.  As a result, nearly half of all patients were censored (excluded) from the

14   progression free survival evaluation.  Finally, CytRx announced that it  "expects to

15   conduct a second analysis, which will include longer patient follow-up and allow

16   for greater maturation of all endpoints."

17       7.      On this news, CytRx's stock price fell $1.50 per share, or 59.7%, to

18   close at $1.01 per share on July 12, 2016, on unusually heavy trading volume.  The

19   Company's stock price continued to decline over the next two trading days, falling

20   10%, to close at $0.90 per share on July 14, 2016.

21       8.      Throughout the Class Period, Defendants made materially false and/or

22   misleading statements, as well as failed to disclose material adverse facts about the

23   Company's business, operations, and prospects. Specifically, Defendants made

24   false and/or misleading statements and/or failed to disclose: (1) that the clinical

25   hold placed on the Phase 3 trial of aldoxorubicin for STS would prevent sufficient

26   follow-up for patients involved in the study; (2) that, as a result, nearly half of all

27   patients would be censored (excluded) from the progression free survival

28

1 | evaluation; (3) that, in response, CytRx would likely conduct a second analysis; (4)
2 | that, as such, the results of the trial could be materially affected and/or approval of
3 | aldoxorubicin for STS could be delayed; and (5) that, as a result of the foregoing,
4 | Defendants' statements about CytRx's business, operations, and prospects, were
5 | false and misleading and/or lacked a reasonable basis.

6 |     9.    As a result of Defendants' wrongful acts and omissions, and the
7 | precipitous decline in the market value of the Company's securities, Plaintiff and
8 | other Class members have suffered significant losses and damages.

9 | **JURISDICTION AND VENUE**

10 |     10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the
11 | Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated
12 | thereunder by the SEC (17 C.F.R. § 240.10b-5).

13 |     11.    This Court has jurisdiction over the subject matter of this action
14 | pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §
15 | 78aa).

16 |     12.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §
17 | 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial
18 | acts in furtherance of the alleged fraud or the effects of the fraud have occurred in
19 | this Judicial District.  Many of the acts charged herein, including the dissemination
20 | of materially false and/or misleading information, occurred in substantial part in
21 | this Judicial District.  In addition, CytRx's principal executive offices are located
22 | within this Judicial District.

23 |     13.    In connection with the acts, transactions, and conduct alleged herein,
24 | Defendants directly and indirectly used the means and instrumentalities of
25 | interstate commerce, including the United States mail, interstate telephone
26 | communications, and the facilities of a national securities exchange.

27
28

## PARTIES

14.    Plaintiff Nicholas Crihfield, as set forth in the accompanying certification, incorporated by reference herein, purchased CytRx common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.    Defendant CytRx is a Delaware corporation with its principal executive offices located at 11726 San Vicente Boulevard, Suite 650, Los Angeles, California.    CytRx's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "CYTR."

16.    Defendant Steven A. Kriegsman ("Kriegsman") was, at all relevant times, the Chief Executive Officer ("CEO") of CytRx.

17.    Defendant John Y. Caloz ("Caloz") was, at all relevant times, Chief Financial Officer ("CFO") of CytRx.

18.    Defendants Kriegsman and Caloz are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of CytRx's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the

false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

19.   CytRx is a biopharmaceutical research and development company specializing in oncology.   One of the Company's primary trial drugs is "aldoxorubicin."

### Materially False and Misleading
### Statements Issued During the Class Period

20.   The Class Period begins on November 18, 2014.  On that day, CytRx issued a press release entitled, "CytRx Announces Partial Clinical Hold Affecting Aldoxorubicin Clinical Trials."  Therein, the Company, in relevant part, stated:

> LOS ANGELES, Nov. 18, 2014 /PRNewswire/ -- CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today announced that the Company has received notice from the United States Food and Drug Administration (FDA) that its clinical trials for aldoxorubicin have been placed on partial clinical hold.  All currently enrolled patients can continue receiving aldoxorubicin treatment, or comparator drugs, as per study protocols, but no new patients can be enrolled until the clinical hold is lifted.
>
> The FDA has indicated that the partial clinical hold is due to the reported death of a patient with advanced-stage cancer who did not qualify to participate in any of the ongoing aldoxorubicin clinical trials, but had received aldoxorubicin under the Company's expanded access ("compassionate use") program. At the FDA's request, the Company will amend all aldoxorubicin study protocols to include an appropriate inclusion/exclusion criteria, an additional patient screening assessment and an evaluation of serum electrolytes prior to aldoxorubicin administration.  CytRx is working diligently in collaboration with the FDA to seek the release of the clinical hold and resume enrollment in its clinical studies as expeditiously as possible.

CytRx currently believes that the partial hold issue will be expeditiously resolved and that enrollment rates and timelines for its ongoing trials will remain materially unchanged. The Company currently expects to announce preliminary results from the ongoing Phase 2 clinical trial of aldoxorubicin in Kaposi's Sarcoma in the second quarter of 2015 and preliminary results from the ongoing Phase 2 clinical trial of aldoxorubicin in glioblastoma multiforme in the first half of 2015. CytRx remains committed to completing enrollment of its ongoing pivotal global Phase 3 trial in second-line soft tissue sarcoma by the end of 2015.

21.    On December 3, 2015, the Company issued a press release entitled "CytRx Receives Written FDA Communication Regarding Partial Clinical Hold for Aldoxorubicin Clinical Trials." Therein, the Company, in relevant part, stated:

LOS ANGELES, Dec. 3, 2014 /PRNewswire/ -- CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today announced that the Company has received written notice from the United States Food and Drug Administration (FDA) that its clinical trials for aldoxorubicin have been placed on partial clinical hold. The news supplements and is consistent with the prior verbal communications from the FDA.

As previously announced, all currently enrolled patients can continue receiving aldoxorubicin treatment, or comparator drugs, as per study protocols, but no new patients can be enrolled until the clinical hold is lifted. At the FDA's request, the Company will amend all aldoxorubicin study protocols to include an appropriate inclusion/exclusion criteria, an additional patient screening assessment and an evaluation of serum electrolytes prior to aldoxorubicin administration. CytRx is working diligently in collaboration with the FDA to seek the release of the clinical hold and resume enrollment in its clinical studies.

CytRx currently believes that the partial hold issue will be expeditiously resolved and that enrollment rates and timelines for its ongoing trials will remain materially unchanged, subject to FDA timing. The Company currently expects to announce preliminary results from the ongoing Phase 2 clinical trial of aldoxorubicin in Kaposi's Sarcoma in the first half of 2015 and preliminary results

from the ongoing Phase 2 clinical trial of aldoxorubicin in glioblastoma multiforme in the first half of 2015. CytRx remains committed to completing enrollment of its ongoing pivotal global Phase 3 trial in second-line soft tissue sarcoma by the end of 2015.

22.   On January 20, 2015, CytRx issued a press release entitled, "CytRx Announces FDA's Removal of Partial Clinical Hold for Aldoxorubicin Clinical Trials Permitting Immediate Enrollment of New Patients." Therein, the Company, in relevant part, stated:

OS ANGELES, Jan. 20, 2015 /PRNewswire/ -- CytRx Corporation (Nasdaq: CYTR), a biopharmaceutical research and development company specializing in oncology, today announced that the United States Food and Drug Administration (FDA) has removed the partial clinical hold on the Company's aldoxorubicin clinical trials. Enrollment and dosing of new patients is now permitted after study sites' Institutional Review Boards (IRBs) approve the revised trial protocols.

"CytRx developed modified study parameters intended to avoid potential risks, while allowing the company to evaluate the therapeutic impact of aldoxorubicin for patients with soft tissue sarcoma, glioblastoma, Kaposi's sarcoma, and small cell lung cancer, among other trials," said Steven A. Kriegsman, Chairman and CEO of CytRx. "Our staff worked closely with the FDA Oncology Division to resolve all partial clinical hold issues as rapidly as possible. We expect enrollment and dosing in the ongoing clinical trials to be back underway soon."

CytRx currently believes that enrollment rates and timelines for its trials will remain materially unchanged. The Company expects to complete enrollment in its ongoing pivotal global Phase 3 trial in second-line soft tissue sarcoma by the end of 2015 and unblind the clinical data by mid-2016. Subject to FDA approval, CytRx's market launch of aldoxorubicin for second line soft tissue sarcoma is projected to commence in 2017.

23.   On March 10, 2015, CytRx issued a press release entitled, "CytRx Reports 2014 Financial Results." Therein, the Company, in relevant part, stated:

**LOS ANGELES – March 10, 2014** [sic] – CytRx Corporation (CYTR), a biopharmaceutical research and development company specializing in oncology, today reported financial results for the twelve months ended December 31, 2014, and also provided an overview of recent accomplishments and upcoming milestones for its clinical development programs.

"CytRx achieved a number of important clinical milestones across the aldoxorubicin program during the fourth quarter and in early 2015," said Steven A. Kriegsman, CytRx President and CEO. "We reported promising overall survival results from our global Phase 2b clinical trial in soft tissue sarcoma, an indication where survival benefit has not been seen from investigational candidates for many years. Looking forward, we have several important development and clinical milestones that we are working toward this year, including the development of new investigational, albumin-binding, anti-cancer candidates from our discovery laboratory during the fourth quarter, and completion of enrollment in the ongoing pivotal global Phase 3 clinical trial of aldoxorubicin as a second-line treatment for STS in the coming year. We also reported positive interim results from two Phase 2 aldoxorubicin trials; one in glioblastoma and one in Kaposi's sarcoma."

**Fourth Quarter 2014 and Recent Highlights**

**Reported Overall Survival (OS) Results from Global Phase 2b Clinical Trial of Aldoxorubicin in Soft Tissue Sarcoma (STS).** In January 2015, the Company announced encouraging OS results, the secondary endpoint, from its completed multicenter, randomized, open-label global Phase 2b clinical trial investigating the efficacy and safety of aldoxorubicin compared with doxorubicin as first-line therapy in subjects with metastatic, locally advanced or unresectable STS. The OS results in 123 patients demonstrated that aldoxorubicin-treated patients demonstrated a 27% reduction in the risk of death compared to patients treated with doxorubicin (HR 0.73: 95% confidence interval 0.44-1.20), the current standard-of-care in this indication. In addition, aldoxorubicin-treated patients demonstrated a 41% likelihood of surviving more than 2 years, a 2-fold increase, compared to a 20% probability for doxorubicin-treated patients. Median overall survival was 16.0 months (95% confidence

interval 13.1-not reached) for aldoxorubicin-treated patients versus 14.5 months (95% confidence interval 8.7-20.9) for doxorubicin treated patients (p=0.21). For treatment-naive patients, representing 90% of the patients in the clinical trial, median overall survival was 16.4 months (95% confidence interval 13.1-not reached) for aldoxorubicin-treated patients versus 14.6 months (95% confidence interval 8.7-20.1) for doxorubicin treated patients (p=0.18).

**Partial Clinical Hold Removed for Aldoxorubicin Clinical Trials.** In January, the Company announced that the United States Food and Drug Administration (FDA) removed the partial clinical hold on the Company's aldoxorubicin clinical trials, which resulted from a patient who was provided aldoxorubicin on a compassionate use basis. Enrollment and dosing of new patients has now resumed following Institutional Review Boards (IRB) approval of revised protocols at study sites. CytRx believes that enrollment rates and timelines for its trials could remain materially unchanged.

*      *      *

**Phase 1b/2 Aldoxorubicin Clinical Data in Soft Tissue Sarcoma (STS) Published in *Cancer*, the Journal of the American Cancer Society.** In October, a paper, titled "A Phase 1b/2 Study of Aldoxorubicin in Patients With Soft Tissue Sarcoma," discussing the results of CytRx's completed Phase 1b/2 trial of aldoxorubicin was published online in Cancer, the prestigious, peer-reviewed journal of the American Cancer Society. The findings in this clinical trial support CytRx's current global phase 3 pivotal clinical trial in patients with STS who have relapsed or have not responded to prior chemotherapy. The full publication can be accessed online here.

**Aldoxorubicin Data Presented at 2014 CTOS Annual Meeting.** In October, aldoxorubicin data were highlighted at the 2014 Connective Tissue Oncology Society (CTOS) Annual Meeting in Berlin, Germany. Sant P. Chawla, M.D., F.R.A.C.P., Director of the Sarcoma Oncology Center and principal investigator of the trial, gave a moderated paper presentation where he provided an update of CytRx's Phase 2b global clinical trial of aldoxorubicin for the treatment of first-line STS. In addition to the moderated paper presentation given by Dr. Chawla, CytRx was also selected for a poster presentation

discussing the cardiac safety of aldoxorubicin and a publication-only paper discussing the pharmacokinetics of aldoxorubicin for the treatment of STS.

\*       \*       \*

**Full Year 2014 Financial Results**

CytRx reported cash, cash equivalents and short-term investments of $77.8 million as of December 31, 2014.

Net loss for the year ended December 31, 2014 was $30.1 million, or $(0.55) per share. Cash used for operating activities for that period was $40.6 million. The net loss for the year reflects $6.6 million for stock option and warrant expense, and non-cash gain of $19.1 million on the fair value adjustment of the warrant liability related to warrants issued in August 2011 and July 2009.

Net loss for the year ended December 31, 2013 was $47.5 million, or $(1.44) per share. Cash used for operating activities for that period was $23.8 million. The net loss for the 2013 year reflects $4.0 million for stock option and warrant expense, and non-cash loss of $20.2 million on the fair value adjustment of the warrant liability.

Research and development (R&D) expenses were $36.7 million for 2014, and included development expenses of $29.9 million for aldoxorubicin, approximately $1.0 million for pre-clinical development of new albumin-binding cancer drugs (German lab), and approximately $3.3 million for general operation of our clinical programs.  R&D expenses were $17.5 million for 2013.

General and administrative (G&A) expenses were $12.8 million for 2014, compared with $10.3 million for 2013. G&A expenses included non-cash stock-compensation expense of $4.1 million and $3.6 million for 2014 and 2013, respectively.

24.    On the same day, March 10, 2015, CytRx filed its Annual Report with the SEC on Form 10-K for the fiscal year ended December 31, 2014.   The Company's Form 10-K was signed by Defendant Kriegsman, and affirmed the

1  Company's statements regarding financial results and aldoxorubicin in the press
2  release issued the same day.

3      25.    On May 1, 2015, CytRx issued a press release entitled, "CytRx
4  Reports First Quarter 2015 Financial Results."  Therein, the Company, in relevant
5  part, stated:

**LOS ANGELES – May 1, 2015** – CytRx Corporation (CYTR), a
biopharmaceutical research and development company specializing in
oncology, today reported financial results for the three months ended
March 31, 2015, and provided an overview of recent accomplishments
and upcoming milestones for its clinical development programs.

"CytRx achieved several milestones in the early months of 2015,
including the announcement of encouraging data from its clinical trial
of aldoxorubicin in patients with soft tissue sarcoma, and positive
interim data in glioblastoma (GBM) and Kaposi's Sarcoma (KS),"
said Steven A. Kriegsman, Chairman and CEO of
CytRx. "Aldoxorubicin has now been tested in over 300 patients with
cancer and is currently being studied in six ongoing clinical trials
across multiple cancer types with high unmet medical need. We will
continue to diligently execute our ongoing pivotal global Phase 3 trial
in soft tissue sarcoma (STS), and we look forward to several
development and clinical milestones in 2015, including further results
from our two ongoing Phase 2 trials in GBM and KS, along with
reaching enrollment targets in our Phase 2b small cell lung cancer
(SCLC) trial and our two Phase 1b trials evaluating aldoxorubicin in
combination with widely used anti-cancer drugs. It is an exciting time
at CytRx and we look forward to updating you as these events
unfold."

Mr. Kriegsman continued: "On the corporate front, we also recently
expanded our Board of Directors to include two new independent
members who have unique backgrounds and deep understanding in
their respective areas of expertise. Both Dr. Anita Chawla and Eric
Selter bring exceptional experience and valuable perspectives and
they will be invaluable as we advance aldoxorubicin and prepare for
future commercialization. We are delighted to welcome them both to
the CytRx leadership team."

**First Quarter 2015 and Recent Highlights**

\*      \*      \*

**Reported Overall Survival (OS) Results from its Global Phase 2b Clinical Trial of Aldoxorubicin in Soft Tissue Sarcoma (STS).** In January 2015, the Company announced encouraging OS results, the secondary endpoint, from its completed multicenter, randomized, open-label global Phase 2b clinical trial investigating the efficacy and safety of aldoxorubicin compared with doxorubicin as first-line therapy in subjects with metastatic, locally advanced or unresectable STS. The OS results in 123 patients demonstrated that aldoxorubicin-treated patients demonstrated a 27% reduction in the risk of death compared to patients treated with doxorubicin (HR 0.73: 95% confidence interval 0.44-1.20), the current standard-of-care in this indication. In addition, aldoxorubicin-treated patients demonstrated a 41% likelihood of surviving more than 2 years, a 2-fold increase, compared to a 20% probability for doxorubicin-treated patients. Median overall survival was 16.0 months (95% confidence interval 13.1-not reached) for aldoxorubicin-treated patients versus 14.5 months (95% confidence interval 8.7-20.9) for doxorubicin treated patients (p=0.21). For treatment-naive patients, representing 90% of the patients in the clinical trial, median overall survival was 16.4 months (95% confidence interval 13.1-not reached) for aldoxorubicin-treated patients versus 14.6 months (95% confidence interval 8.7-20.1) for doxorubicin treated patients (p=0.18).

\*      \*      \*

**First Quarter 2015 Financial Results**

CytRx reported cash, cash equivalents and short-term investments of $65.2 million as of March 31, 2015.

Net loss for the quarter ended March 31, 2015 was $17.5 million, or $0.31 per share, compared with a net gain of $4.7 million, or $0.09 per share, for the quarter ended March 31, 2014. During the first quarter of 2015, the Company recognized a non-cash loss of $1.9 million, compared to a non-cash gain of $14.7 million for the three-month period ended March 31, 2014 on the valuation of warrant

derivative liabilities related to warrants issued in August 2011 and July 2009 (now expired). The Company did not recognize revenues for the first quarters of 2015 or 2014.

Research and development (R&D) expenses were $12.6 million for the first quarter of 2015, and included development expenses of $10.8 million for the aldoxorubicin program. R&D expenses were $7.0 million for the first quarter of 2014.

General and administrative (G&A) expenses were $3.1 million for the first quarter of 2015, compared with $3.1 million for the first quarter of 2014.

26.     On the same day, May 1, 2015, CytRx filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended March 31, 2015.   The Company's Form 10-Q was signed by Defendant Caloz, and affirmed the Company's statements regarding financial results and aldoxorubicin in the press release issued the same day.

27.     On August 3, 2015, CytRx issued a press release entitled, "CytRx Reports 2015 Second Quarter Financial Results."   Therein, the Company, in relevant part, stated:

**LOS ANGELES – August 3, 2015** – CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today reported financial results for the three months ended June 30, 2015, and also provided an overview of recent accomplishments and upcoming milestones for its clinical development programs.

"The second quarter of 2015 has been very productive for CytRx. Enrollment in our ongoing pivotal global Phase 3 clinical trial of aldoxorubicin in soft tissue sarcoma (STS) continues on track to be completed in the first quarter of 2016. On the financial front, we successfully closed a public equity offering raising an additional $28.8 million in gross proceeds, which significantly strengthens our balance sheet and allows us to further advance the aldoxorubicin program, provide for pre-commercialization launch expenses, and introduce our next generation of therapies into the clinic in 2016," said Steven A.

Kriegsman, Chairman and CEO of CytRx. "The second quarter also included the announcement of promising updated data from our Phase 2 programs evaluating aldoxorubicin in Kaposi's Sarcoma (KS) and glioblastoma (GBM), in addition to compelling data in our two combination trials."

Mr. Kriegsman continued: "We were also pleased to recently unveil our proprietary LADR™ (Linker Activated Drug Release) technology platform which will be used for the development of our next-generation therapeutic drug conjugates which we may employ as treatments for liver, pancreatic, and non-small cell lung cancers, among others. These conjugates, developed at our laboratory facilities in Freiburg, Germany, will be designed to control release in tumors of high-potency chemotherapeutics that are attached to either albumin or anti-cancer antibodies. We believe this proprietary platform is highly complementary to and builds upon our ongoing global Phase 3 aldoxorubicin program."

\*   \*   \*

**Second Quarter 2015 Financial Results**

CytRx reported cash, cash equivalents and short-term investments of $53.8 million as of June 30, 2015.

Net loss for the three months ended June 30, 2015 was $11.7 million, or $0.21 per share, compared with a net loss of $15.7 million, or $0.28 per share, for the three months ended June 30, 2014. The decrease of $4.0 million in net loss during the current three-month period resulted primarily from a gain of $2.4 million on warrant derivative liability in the current quarter, as compared to a loss on warrant derivative liability of $2.5 million in the comparative 2014 period, for a difference of $4.9 million.

Research and development (R&D) expenses were $10.0 million for the second quarter of 2015, and included development expenses of $8.2 million for aldoxorubicin. The remaining $1.8 million of R&D expenses were primarily related to research and development support costs. R&D costs were $10.4 million for the second quarter of 2014.

General and administrative (G&A) expenses were $4.2 million for the second quarter of 2015, compared with $2.9 million for the second quarter of 2014. G&A expenses for the second quarter of 2015 included non-cash employee stock-compensation expense of $1.7 million, compared to $0.3 million for the same period in 2014.

28.    On the same day, August 3, 2015, CytRx filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended June 30, 2015.  The Company's Form 10-Q was signed by Defendant Caloz, and affirmed the Company's statements regarding financial results and aldoxorubicin in the press release issued the same day.

29.    On November 3, 2015, CytRx issued a press release entitled, "CytRx Reports 2015 Third Quarter Financial Results."  Therein, the Company, in relevant part, stated:

> **LOS ANGELES – November 3, 2015 –** CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today reported financial results for the three months ended September 30, 2015, and also provided an overview of recent accomplishments and upcoming milestones.
>
> "Enrollment in our pivotal global Phase 3 clinical trial of aldoxorubicin in soft tissue sarcoma (STS) continues to progress quite favorably, and is on track to be completed next quarter as planned, with data expected in the second half of 2016," said Steven A. Kriegsman, Chairman and CEO of CytRx. "The third quarter saw the publication in the prestigious peer-reviewed journal *JAMA Oncology* of our positive global Phase 2b clinical trial results with aldoxorubicin in first line STS, and poster presentations regarding aldoxorubicin in Kaposi's sarcoma and small cell lung cancer. Together, these results and presentations continue to strengthen the case for aldoxrobucin's potential to become an important new treatment available for oncologists and their patients."

**Third Quarter 2015 and Recent Highlights**

**Announced the Publication of Phase 2b Clinical Trial Results for Soft Tissue Sarcoma in the Peer-Reviewed Journal *JAMA Oncology*.** In September 2015, *JAMA Oncology*, the prestigious peer-reviewed Journal of the American Medical Association (JAMA), published a paper entitled "First-Line Aldoxorubicin vs Doxorubicin in Metastatic or Locally Advanced Unresectable Soft-Tissue Sarcoma: A Phase 2b Randomized Clinical Trial." This paper discusses the design, methodology and results from CytRx's completed multicenter, randomized, open-label global Phase 2b clinical trial investigating the efficacy and safety of aldoxorubicin compared with doxorubicin as first-line therapy in patients with metastatic or locally advanced unresectable STS. The results suggest that aldoxorubicin is the first single-agent therapy to show significantly superior efficacy over doxorubicin. Additionally, patients treated with aldoxorubicin did not exhibit evidence of acute cardiotoxicity. The full article can be accessed here.

\* \* \*

**Third Quarter 2015 Financial Results**

CytRx reported cash, cash equivalents and short-term investments of $70.8 million as of September 30, 2015.

Net loss for the three months ended September 30, 2015 was $7.1 million, or $0.11 per share, compared with a net loss of $5.6 million, or $0.10 per share, for the three months ended September 30, 2014. The increase of $1.5 million in net loss during the current three-month period resulted primarily from a reduction in the gain on warrant derivative liability, which was $3.5 million in the current quarter, as compared to $7.3 million in the comparative 2014 period, for a difference of $3.8 million.

Research and development (R&D) expenses were $8.5 million for the third quarter of 2015, and included development expenses of $6.8 million for aldoxorubicin and $0.4 million for CytRx's German laboratory operations. The remaining $1.3 million of R&D expenses were primarily related to research and development support costs, including non-cash employee stock option expenses.. R&D costs were

$10.6 million for the third quarter of 2014.

General and administrative (G&A) expenses were $2.2 million for the third quarter of 2015, compared with $2.4 million for the second quarter of 2014. G&A expenses for the third quarter of 2015 included non-cash employee stock-compensation expense of $0.5 million, compared to $0.4 million for the same period in 2014.

30.    On the same day, November 3, 2015, CytRx filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended September 30, 2015.  The Company's Form 10-Q was signed by Defendant Caloz, and affirmed the Company's statements regarding financial results and aldoxorubicin in the press release issued the same day.

31.    On March 11, 2016, CytRx issued a press release entitled, "CytRx Reports 2015 Financial Results."  Therein, the Company, in relevant part, stated:

**LOS ANGELES – March 11, 2016 –** CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today announced financial results for the year ended December 31, 2015, and provided an overview of recent accomplishments and upcoming milestones for its research and development programs.

"2015 was an important year as CytRx achieved several key milestones, including completing the enrollment of our global, pivotal Phase 3 trial with aldoxorubicin one quarter ahead of schedule," said Steven A. Kriegsman, CytRx's Chairman and CEO. "We unveiled our LADR$^{TM}$ technology platform and nominated DK049 as the next drug candidate for clinical development. Additionally, as we prepare for aldoxorubicin's commercial launch, we welcomed Olivia Ware as Chief Commercial Officer and three new members to the Board of Directors:  Cheryl Cohen, former Chief Commercial Officer at Medivation who led the launch of Xtandi®, Anita Chawla, Ph.D., a health economics, pricing and reimbursement expert formerly at Genentech, and Eric Selter, an investment professional at Morton Capital Management, LLC."

**Fourth Quarter 2015 and Recent Highlights**

**Announced $40 Million Long-Term Debt Facility.** In February 2016, CytRx announced that it entered into a long-term loan agreement with Hercules Technology Growth Capital and received an initial amount of $25 million.  An additional $15 million can be accessed at CytRx's option, subject to achieving certain R&D milestones by December 31, 2016.

**Appointed Olivia Ware as Chief Commercial Officer.**  In January 2016, Ms. Ware joined CytRx as Chief Commercial Officer.  She brings more than 20 years of biotechnology and pharmaceutical experience including 13 years at Genentech where she was responsible for key aspects of the launches of the oncology drugs Rituxan®, Herceptin® and Avastin®.

**Completed Enrollment in Pivotal Global Phase 3 Trial Ahead of Schedule.** In December 2015, CytRx announced that the Phase 3 clinical trial with aldoxorubicin for the treatment of second-line soft tissue sarcomas reached the target enrollment of 400 patients.  It was originally estimated to be completed in Q1 2016.  Top-line results from this trial are expected in Q2 2016.

**Nominated DK049 for Clinical Development.** In December 2015, CytRx announced that DK049 has been selected for advancement into clinical trials.  DK049 incorporates a novel two-stage linker from the LADR$^{TM}$ technology platform and has demonstrated significant anti-tumor activity in animal models of non-small cell lung cancer, ovarian and pancreatic cancers.

**Announced the Settlement of Consolidated Securities Class Action Lawsuit.** In December 2015, CytRx agreed to settle its class action lawsuits to avoid potentially lengthy and costly litigation.  The Company believes the allegations are completely without merit and the settlement contains no admission of liability or wrongdoing. The agreement provides for a payment in cash of $4,000,000 of which CytRx's insurance carriers will cover at least $3,500,000, and between 1,200,000 and 1,800,000 shares of common stock depending on the prevailing stock price at the time of the court's final approval of the settlement.

**Presented Aldoxorubicin Combination Data at the 2015 CTOS Annual Meeting.** In November 2015, Sant Chawla, M.D., F.R.A.C.P., Director of the Sarcoma Oncology Center, presented data from the Phase 1b/2 clinical trial of aldoxorubicin in combination with ifosfamide/Mesna at the 21st Annual Connective Tissue Oncology Society (CTOS) Annual Meeting in Salt Lake City, Utah. At the time of the meeting, eight of 10 patients with soft and non-soft tissue sarcomas treated with the combination demonstrated tumor shrinkage include three partial responses.  This trial is ongoing.

**Reported Update on Aldoxorubicin Clinical Trial in Glioblastoma.** In November 2015, CytRx announced the completion of enrollment in the Phase 2 clinical trial evaluating aldoxorubicin in patients with unresectable glioblastoma (GBM).  To date, aldoxorubicin has shown evidence of tumor shrinkage.  Patients continue to be followed as overall survival has not yet been reached.

32.    On the same day, March 11, 2016, CytRx filed its Annual Report with the SEC on Form 10-K for the fiscal year ended December 31, 2015.  The Company's Form 10-K was signed by Defendant Kriegsman, and affirmed the Company's statements regarding financial results and aldoxorubicin in the press release issued the same day.

33.    On May 10, 2016, CytRx filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended March 31, 2016.  The Company's Form 10-Q was signed by Defendant Caloz.  Therein, the Company, in relevant part, stated:

In the first quarter of 2014, we initiated a pivotal Phase 3 trial of aldoxorubicin as a therapy for patients with STS whose tumors have progressed following treatment with chemotherapy, and we have received approval from the FDA to continue dosing patients with aldoxorubicin until disease progression in that clinical trial. The Phase 3 trial is being conducted under a Special Protocol Assessment, or SPA, granted by the U.S. Food and Drug Administration, or FDA. The SPA means that the FDA agrees that the design and analyses proposed in the Phase 3 trial protocol are acceptable to support regulatory approval of the product candidate with respect to effectiveness of the indication studied, and will not subsequently

change its perspective on these matters, unless previously unrecognized public or animal health concerns were to arise or we were to subsequently modify the protocol. Thus, if the study demonstrates an acceptable benefit-risk profile as determined by the FDA, it would suffice as the single pivotal trial to demonstrate effectiveness and would support registration of aldoxorubicin for this indication. The clinical trial has enrolled 433 patients at approximately 79 clinical sites in the U.S., Europe, Canada, Latin America and Australia. We expect to report the top-line results on progression-free survival, the trial's primary endpoint, towards the end of the second quarter of 2016.

We are currently evaluating aldoxorubicin in a global Phase 2b clinical trial as a second-line treatment for patients with small cell lung cancer, a Phase 2 clinical trial in HIV-related Kaposi's sarcoma, a Phase 2 clinical trial in patients with late-stage glioblastoma (brain cancer), a Phase 1b trial in combination with ifosfamide in patients with sarcoma, and a Phase 1b trial in combination with gemcitabine in subjects with metastatic solid tumors. We have completed a global Phase 2b clinical trial with aldoxorubicin as a first-line therapy for STS, a Phase 1b/2 clinical trial primarily in the same indication, a Phase 1b clinical trial of aldoxorubicin in combination with doxorubicin in patients with advanced solid tumors and a Phase 1b pharmacokinetics clinical trial in patients with metastatic solid tumors.

34.    On May 11, 2016, CytRx issued a press release entitled, "CytRx Reports First Quarter 2016 Financial Results." Therein, the Company, in relevant part, stated:

**LOS ANGELES – May 11, 2016 –** CytRx Corporation (NASDAQ: CYTR), a biopharmaceutical research and development company specializing in oncology, today reported financial results for the three months ended March 31, 2016, and provided an overview of recent accomplishments and upcoming milestones for its research and development programs.

"So far, 2016 has been a very productive year for CytRx," said Steven A. Kriegsman, Chairman and CEO of CytRx. "On the clinical front, we reached the 191 progression events in our global, pivotal Phase 3

trial with aldoxorubicin in second-line soft tissue sarcoma to trigger the data verification and analysis. We look forward to announcing top-line results at the end of June 2016. We announced that we will present updates on three aldoxorubicin clinical trials at the ASCO Annual Meeting in June 2016. Additionally, our team recently presented data at the American Association of Cancer Research Annual Meeting on our LADR$^{TM}$ technology platform and on DK049, the first drug to emerge from that platform."

Mr. Kriegsman continued: "On the corporate side, we added commercial oncology expertise with the addition of Ms. Olivia Ware to our executive management team. We also raised an additional $25 million in non-dilutive capital to fund clinical and pre-commercial activities for aldoxorubicin."

**First Quarter 2016 and Recent Highlights**

**Bolstered the Management Team**. In January 2016, CytRx hired Ms. Olivia Ware as Chief Commercial Officer. Ms. Ware brings more than 20 years of biotechnology and pharmaceutical experience, including thirteen years at Genentech where she was responsible for key aspects of the launches of the oncology drugs Rituxan®, Herceptin® and Avastin®. While at Genentech, Ms. Ware was a Senior Director of Oncology and was responsible for the initial commercial launch of Avastin in the U.S., which reached $1 billion in sales during its first year on the market. Prior to this, she was head of Herceptin marketing and held a number of other positions in the commercial organization. Later, Ms. Ware was a Senior Director in the Product Portfolio Management Group, managing approximately 20 senior leaders responsible for building and leading the cross-functional drug development teams that developed and implemented strategic plans and guided the drug development processes for all oncology products at Genentech.

**Strengthened the Balance Sheet**. In February 2016, CytRx entered into a long-term loan for up to $40 million with Hercules Technology Growth Capital. The initial tranche of $25 million was received, and CytRx can access an additional $15 million, subject to certain research and development milestones.

**Reached the Target Number of Events in the Global Pivotal Phase 3 Trial.** In April 2016, CytRx achieved the target number of progression events in the aldoxorubicin global, pivotal Phase 3 trial in patients with second-line soft tissue sarcomas. Our contract research organization started the collection and verification of the trial data from all 433 patients enrolled at 79 sites around the globe. CytRx expects to report top-line results following the analysis of the data in June 2016.

**Presented Data on LADR$^{TM}$ Technology Platform and DK049**. In April 2016, CytRx presented two posters at the American Association of Cancer Research (AACR) Annual Meeting detailing both our Linker Activated Drug Release (LADR$^{TM}$) Platform and DK049, an albumin-binding derivative of the widely used chemotherapy agent gemcitabine combined with our LADR$^{TM}$ technology. DK049 was nominated for clinical development in 2015.

*       *       *

**First Quarter 2016 Financial Results**

CytRx reported cash, cash equivalents and short term investments of $68.2 million as of March 31, 2016.

Net loss for the quarter ended March 31, 2016 was $12.6 million, or $0.19 per share, compared with a net loss of $17.5 million, or $0.31 per share, for the quarter ended March 31, 2015. During the first quarter of 2016, CytRx recognized a non-cash loss on warrant derivative liability of $0.2 million, compared to a non-cash loss of $1.9 million for the three-month period ended March 31, 2015. The Company did not recognize revenues for the first quarters of 2016 or 2015.

Research and development (R&D) expenses were $8.2 million for the first quarter of 2016, and included development expenses of $5.8 million for the aldoxorubicin program. R&D expenses were $12.6 million for the first quarter of 2015.

General and administrative (G&A) expenses were $4.0 million for the first quarter of 2016, compared to $3.1 million for the first quarter of 2015.

35.     The above statements contained in ¶¶20-34 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the clinical hold placed on the Phase 3 trial of aldoxorubicin for STS would prevent sufficient follow-up for patients involved in the study; (2) that, as a result, nearly half of all patients would be censored (excluded) from the progression free survival evaluation; (3) that, in response, CytRx would likely conduct a second analysis; (4) that, as such, the results of the trial could be materially affected and/or approval of aldoxorubicin for STS could be delayed; and (5) that, as a result of the foregoing, Defendants' statements about CytRx's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## **Disclosures at the End of the Class Period**

36.     On July 11, 2016, CytRx issued a press release announcing the results of the Company's Phase 3 clinical trial of aldoxorubicin compared to investigator's choice therapy in patients with relapsed or refractory soft tissue sarcomas ("STS"). Therein, the Company disclosed:

LOS ANGELES, July 11, 2016 /PRNewswire/ -- CytRx Corporation (CYTR), a biopharmaceutical research and development company specializing in oncology, today announced the results of an analysis of its global, randomized, Phase 3 clinical trial of aldoxorubicin compared to investigator's choice therapy in patients with relapsed or refractory soft tissue sarcomas (STS).

In accordance with the FDA-granted special protocol assessment, the current analysis occurred following 191 progression events. Because enrollment was interrupted by a partial clinical hold in November 2014, this analysis did not provide for sufficient follow-up for the nearly two-thirds of patients who entered the Phase 3 study after the hold was resolved and enrollment resumed. This resulted in nearly half of all patients being censored (excluded) from the current

progression free survival (PFS) evaluation.  CytRx expects to conduct a second analysis, which will include longer patient follow-up and allow for greater maturation of all endpoints.  The Company expects to announce the results of this evaluation and hold an end-of-Phase 3 meeting with the Food and Drug Administration (FDA) in the fourth quarter of 2016.  The partial clinical hold was related to a single patient enrolled in a compassionate use study, which was subsequently resolved successfully.

For the current evaluation, the study did not show a significant difference between aldoxorubicin and investigator's choice therapy for PFS, with a median of 4.17 months and 4.04 months, respectively, for the study's primary endpoint (hazard ratio: 0.91).  However, the most immediate indications of therapeutic activity, objective response rate (ORR) and disease control rate (ORR + stable disease $\geq$ 4 months), showed a near doubling in the aldoxorubicin arm compared to investigator's choice, including in patients who previously received treatment with doxorubicin.  Disease control rate for aldoxorubicin was significantly greater than investigator's choice therapy in the intent-to-treat population (p=0.048) as well as in patients who received prior doxorubicin (p=0.0415).  Patients continue to be followed for overall survival (OS), a secondary endpoint of the trial.
"While results from this current analysis are immature, a near doubling of response rates with aldoxorubicin suggests a highly active therapy which may benefit certain patients with soft tissue sarcoma," said Sant Chawla, M.D., F.R.A.C.P., Principal Investigator and the Director of the Sarcoma Oncology Center in Santa Monica, California.  "Because enrollment was interrupted by a clinical hold, both PFS and response data need to be analyzed at a future date to account for patients enrolled later in the trial.  I look forward to this subsequent analysis providing a more complete understanding of aldoxorubicin's potential in this very challenging disease."

Treatment-related adverse events for aldoxorubicin were consistent with those observed in prior studies.  Aldoxorubicin was not associated with clinically significant cardiac, kidney or liver toxicities.  The Company plans to present updated results of the study at an upcoming medical meeting.

"The complexity, in terms of tumor diversity and primary location, makes soft tissue sarcoma extremely difficult to treat, especially in the relapsed and refractory setting, resulting in few treatment advances over the last four decades," said Daniel Levitt, M.D., Ph.D., Executive Vice President and Chief Medical Officer of CytRx.  "This first-of-its-kind study in STS included a comparator arm with multiple regimens, allowing for treatments to be matched to specific sarcoma subtypes.  Despite a requirement for this challenging study design, aldoxorubicin demonstrated markedly greater activity over investigator's choice therapy.  That said, the unforeseen clinical hold that interrupted this study impacted the outcome of the current evaluation, underscoring a need for a subsequent analysis."

"In over 550 patients treated to date, aldoxorubicin has demonstrated anti-tumor activity in multiple tumor types and has shown a manageable safety profile," said Steven A. Kriegsman, CytRx's Chairman and CEO.  "With approximately $68.2 million in cash and equivalents as of our last 10-Q filing, CytRx is funded through the next Phase 3 STS trial analysis and through a readout of our global Phase 2b trial of aldoxorubicin in small cell lung cancer.  We are deeply grateful for the continued support and commitment of the patients, their families, the investigators and clinical support professionals participating in the Phase 3 trial."

37.    On this news, CytRx's stock price fell $1.50 per share, or 59.7%, to close at $1.01 per share on July 12, 2016, on unusually heavy trading volume.  The Company's stock price continued to decline over the next two trading days, falling 10%, to close at $0.90 per share on July 14, 2016.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired CytRx's securities between November 18, 2014, and July 11, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs,

1  successors, or assigns, and any entity in which Defendants have or had a
2  controlling interest.

3      39.    The members of the Class are so numerous that joinder of all
4  members is impracticable.  Throughout the Class Period, CytRx's common stock
5  actively traded on the NASDAQ.  While the exact number of Class members is
6  unknown to Plaintiff at this time and can only be ascertained through appropriate
7  discovery, Plaintiff believes that there are at least hundreds or thousands of
8  members in the proposed Class.  Millions of CytRx shares were traded publicly
9  during the Class Period on the NASDAQ.  As of May 10, 2016, CytRx had
10 66,760,065 shares of common stock outstanding.  Record owners and other
11 members of the Class may be identified from records maintained by CytRx or its
12 transfer agent and may be notified of the pendency of this action by mail, using the
13 form of notice similar to that customarily used in securities class actions.

14     40.    Plaintiff's claims are typical of the claims of the members of the Class
15 as all members of the Class are similarly affected by Defendants' wrongful
16 conduct in violation of federal law that is complained of herein.

17     41.    Plaintiff will fairly and adequately protect the interests of the
18 members of the Class and has retained counsel competent and experienced in class
19 and securities litigation.

20     42.    Common questions of law and fact exist as to all members of the
21 Class and predominate over any questions solely affecting individual members of
22 the Class.  Among the questions of law and fact common to the Class are:

23         (a)    whether the federal securities laws were violated by
24 Defendants' acts as alleged herein;

25         (b)    whether statements made by Defendants to the investing public
26 during the Class Period omitted and/or misrepresented material facts about the
27 business, operations, and prospects of CytRx; and

28

1    (c)   to what extent the members of the Class have sustained

2    damages and the proper measure of damages.

3    43.   A class action is superior to all other available methods for the fair

4    and efficient adjudication of this controversy since joinder of all members is

5    impracticable.  Furthermore, as the damages suffered by individual Class members

6    may be relatively small, the expense and burden of individual litigation makes it

7    impossible for members of the Class to individually redress the wrongs done to

8    them.  There will be no difficulty in the management of this action as a class

9    action.

10                          **UNDISCLOSED ADVERSE FACTS**

11    44.   The market for CytRx's securities was open, well-developed and

12    efficient at all relevant times.   As a result of these materially false and/or

13    misleading statements, and/or failures to disclose, CytRx's securities traded at

14    artificially inflated prices during the Class Period.  Plaintiff and other members of

15    the Class purchased or otherwise acquired CytRx's securities relying upon the

16    integrity of the market price of the Company's securities and market information

17    relating to CytRx, and have been damaged thereby.

18    45.   During the Class Period, Defendants materially misled the investing

19    public, thereby inflating the price of CytRx's securities, by publicly issuing false

20    and/or misleading statements and/or omitting to disclose material facts necessary

21    to make Defendants' statements, as set forth herein, not false and/or misleading.

22    The statements and omissions were materially false and/or misleading because

23    they failed to disclose material adverse information and/or misrepresented the truth

24    about CytRx's business, operations, and prospects as alleged herein.

25    46.   At all relevant times, the material misrepresentations and omissions

26    particularized in this Complaint directly or proximately caused or were a

27    substantial contributing cause of the damages sustained by Plaintiff and other

28

1  members of the Class. As described herein, during the Class Period, Defendants
2  made or caused to be made a series of materially false and/or misleading
3  statements about CytRx's financial well-being and prospects. These material
4  misstatements and/or omissions had the cause and effect of creating in the market
5  an unrealistically positive assessment of the Company and its financial well-being
6  and prospects, thus causing the Company's securities to be overvalued and
7  artificially inflated at all relevant times. Defendants' materially false and/or
8  misleading statements during the Class Period resulted in Plaintiff and other
9  members of the Class purchasing the Company's securities at artificially inflated
10  prices, thus causing the damages complained of herein when the truth was
11  revealed.

## LOSS CAUSATION

12
13  47. Defendants' wrongful conduct, as alleged herein, directly and
14  proximately caused the economic loss suffered by Plaintiff and the Class.

15  48. During the Class Period, Plaintiff and the Class purchased CytRx's
16  securities at artificially inflated prices and were damaged thereby. The price of the
17  Company's securities significantly declined when the misrepresentations made to
18  the market, and/or the information alleged herein to have been concealed from the
19  market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

20
21  49. As alleged herein, Defendants acted with scienter since Defendants
22  knew that the public documents and statements issued or disseminated in the name
23  of the Company were materially false and/or misleading; knew that such
24  statements or documents would be issued or disseminated to the investing public;
25  and knowingly and substantially participated or acquiesced in the issuance or
26  dissemination of such statements or documents as primary violations of the federal
27  securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of
28

their receipt of information reflecting the true facts regarding CytRx, his/her control over, and/or receipt and/or modification of CytRx's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning CytRx, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

50.   The market for CytRx's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, CytRx's securities traded at artificially inflated prices during the Class Period.  On April 21, 2015, the Company's stock price closed at a Class Period high of $5.27 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of CytRx's securities and market information relating to CytRx, and have been damaged thereby.

51.   During the Class Period, the artificial inflation of CytRx's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CytRx's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of CytRx and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and

1   each of them has been damaged as a result.

2       52.   At all relevant times, the market for CytRx's securities was an

3   efficient market for the following reasons, among others:

4           (a)   CytRx stock met the requirements for listing, and was listed and

5   actively traded on the NASDAQ, a highly efficient and automated market;

6           (b)   As a regulated issuer, CytRx filed periodic public reports with

7   the SEC and/or the NASDAQ;

8           (c)   CytRx regularly communicated with public investors *via*

9   established market communication mechanisms, including through regular

10  dissemination of press releases on the national circuits of major newswire services

11  and through other wide-ranging public disclosures, such as communications with

12  the financial press and other similar reporting services; and/or

13          (d)   CytRx was followed by securities analysts employed by

14  brokerage firms who wrote reports about the Company, and these reports were

15  distributed to the sales force and certain customers of their respective brokerage

16  firms.   Each of these reports was publicly available and entered the public

17  marketplace.

18      53.   As a result of the foregoing, the market for CytRx's securities

19  promptly digested current information regarding CytRx from all publicly available

20  sources and reflected such information in CytRx's stock price. Under these

21  circumstances, all purchasers of CytRx's securities during the Class Period

22  suffered similar injury through their purchase of CytRx's securities at artificially

23  inflated prices and a presumption of reliance applies.

24      54.   A Class-wide presumption of reliance is also appropriate in this action

25  under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United*

26  *States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded

27  on Defendants' material misstatements and/or omissions.   Because this action

28

involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

55.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CytRx who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

56.    Plaintiff repeats and realleges each and every allegation contained

above as if fully set forth herein.

57. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase CytRx's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

58. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for CytRx's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about CytRx's financial well-being and prospects, as specified herein.

60. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CytRx's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in

order to make the statements made about CytRx and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CytRx's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business,

operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of CytRx's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired CytRx's securities during the Class Period at artificially high prices and were damaged thereby.

64.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that CytRx was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CytRx securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct,

Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

67.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.    The Individual Defendants acted as controlling persons of CytRx within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.    As set forth above, CytRx and the Individual Defendants each

violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

///

///

///

///

///

1    Dated:  July 25, 2016                    **GLANCY PRONGAY & MURRAY LLP**

2

3                                             By:  *s/ Robert V. Prongay*
                                              Lionel Z. Glancy
4                                             Robert V. Prongay
                                              Lesley F. Portnoy
5                                             Charles H. Linehan
                                              1925 Century Park East, Suite 2100
6
                                              Los Angeles, CA 90067
7                                             Telephone:  (310) 201-9150
                                              Facsimile:   (310) 201-9160
8

9

10                                            *Attorneys for Plaintiff Nicholas Crihfield*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

## CYTRX CORPORATION SECURITIES LITIGATION

I, Nicholas Crihfield, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase **CYTRX CORPORATION**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in **CYTRX CORPORATION** during the Class Period set forth in the Complaint are as follows:

        (See Attached Transactions)

5.      I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/24/2016
_____
Date

DocuSigned by:
_____
DEAEFAE29F5A4BA...

_____
Nicholas Crihfield

**Nicholas Crihfield's Transactions in**
**CytRx Corporation (CYTR)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 07/01/2016 | Bought | 50 | $2.2400 |
| 07/05/2016 | Bought | 25 | $2.2800 |
| 07/06/2016 | Bought | 25 | $2.2400 |
| 07/07/2016 | Bought | 100 | $2.2300 |
| 07/07/2016 | Bought | 100 | $2.2300 |
| 07/11/2016 | Bought | 200 | $2.2800 |