UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  **CV 16-05519 SJO (SKx)**    DATE:  **October 26, 2016**
           **CV 16-05666 SJO (SKx)**

TITLE:     **Crihfield v. CytRx Corp. et al.**

========================================================================
PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                               Not Present

========================================================================
PROCEEDINGS (in chambers):  ORDER RE: MOTIONS FOR CONSOLIDATION OF THE RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL [Docket Nos. 16, 18, 23, 27]

These matters are before the Court on (1) Movant Gregory D. Callendar's ("Mr. Callendar") Motion for Consolidation of the Related Cases, Appointment as Lead Plaintiff and Approval of Counsel ("Callendar Motion"); (2) Movant Bahjat Saleh's ("Mr. Saleh") Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Saleh Motion"); (3) Movant Brad S. Feldman's ("Mr. Feldman") Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel ("Feldman Motion"); and (4) Movants Harry Diamantopoulos, Kostas Restinas, David Nguyen, Ryan Bird, Sarah Phan, and John Corbitt's (together, the "CytRx Investor Group") Motion to Consolidate Related Actions, for Appointment as Lead Plaintiffs and Approval of Choice of Counsel ("Investor Motion") (together, "Motions"), each filed September 23, 2016.  Mr. Callendar, Mr. Feldman, and the CytRx Investor Group opposed the other parties' Motions on October 3, 2016.[1]  On October 10, 2016, Mr. Callendar filed a Notice of Non-Opposition, Mr. Feldman filed a reply, and the CytRx Investor Group filed a Notice of Non Opposition.  The Court found these matters suitable for disposition without oral argument and vacated the hearings set for October 24, 2015.  *See* Fed. R. Civ. P. 78(b).  For the reasons stated below, the Court **GRANTS** the Callendar Motion and **DENIES** the Saleh, Feldman, and Investor Motions.

I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff Nicholas Crihfield ("Crihfield") initiated this putative class action securities litigation on July 25, 2016, asserting Defendant CytRx Corporation ("CytRx"), a biopharmaceutical research and development company specializing in oncology, violated Section 10(b) of the Securities Exchange

---

[1]  Mr. Saleh withdrew his motion on September 29, 2016.  (*See* Notice of Withdrawal of Saleh Mot., ECF No. 32.)  The Court accordingly **DENIES** the Saleh Motion as **moot**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:    CV 16-05519 SJO (SKx)**          **DATE:    October 26, 2016**
**CV 16-05666 SJO (SKx)**

Act of 1934 ("Exchange Act") and Rule 10b-5, promulgated thereunder, through public statements made in connection with one if its primary trial drugs, aldoxorubicin.  (*See generally* Compl., ECF No. 1.)  Crihfield also asserts CytRx's CEO, Steven A. Kriegsman ("Kriegsman"), and CFO, John Y. Carloz ("Carloz") (together, "Individual Defendants") (together with CyrRx, "Defendants"), violated Section 20(a) of the Exchange Act by virtue of their high-level positions in CytRx.  (*See* Compl. ¶¶ 67-70.)  Crihfield brings this action on behalf of persons and entities, other than Defendants and their affiliates, that acquired CytRx securities between November 18, 2014, and July 11, 2016 (the "Class Period").  (Compl. ¶ 1.)

Crihfield alleges the following in his Complaint.  On November 18, 2014, CytRx announced that the United States Food and Drug Administration ("FDA") placed CytRx's clinical trails for aldoxorubicin on a partial hold in response to a patient death.  (Compl. ¶ 3.)  On December 3, 2014, CytRx issued a press release entitled "CytRx Receives Written FDA Communication Regarding Partial Clinical Hold for Aldoxorubicin Clinical Trials," stating, in relevant part, that "CytRx currently believes that the partial hold issue will be expeditiously resolved and that enrollment rates and timeliness for its ongoing trials will remain materially unchanged, subject to FDA timing."  (Compl. ¶ 4.)

On January 20, 2015, CytRx announced the FDA removed the clinical hold, and on July 11, 2016, issued a press release announcing the results of its Phase 3 clinical trial of aldoxorubicin compared to investigator's choice therapy in patients with relapsed or refractory soft tissue sarcomas ("STS").  (Compl. ¶¶ 5-6.)  In this press release, CytRx disclosed that "the study did not show a significant difference between aldoxorubicin and investigator's choice therapy for [progression free survival] . . . ."  (Compl. ¶ 6.)  Moreover, CytRx disclosed that a partial clinical hold in November 2014 led to insufficient follow-up for nearly two-thirds of patients who entered the Phase 3 study after the hold was resolved and enrollment resulted.  (Compl. ¶ 6.)  As a result, nearly half of all patients were excluded from the progression free survival evaluation.  (Compl. ¶ 6.)  Finally, CytRx announced it "expects to conduct a second analysis, which will include longer patient follow-up and allow for greater maturation of all endpoints."  (Compl. ¶ 6.)

On this news, CytRx's stock price fell $1.50 per share, or 59.7%, to close at $1.01 per share on July 12, 2016, on unusually heavy trading volume.  (Compl. ¶ 7.)  CytRx's stock price continued to decline over the next two trading days, falling 10%, to close at $0.90 per share on July 14, 2016. (Compl. ¶ 7.)

This action is related to a second putative class action securities litigation pending before this Court, captioned *Dorce v. CytRx Corporation et al.* ("*Dorce*"), No. 2:16-cv-05666-SJO-SK (C.D. Cal.).  *Dorce* was filed on July 29, 2016 against the same Defendants and is likewise brought on behalf of persons and entities that acquired CytRx securities during the Class Period.

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 16-05519 SJO (SKx)       DATE:  October 26, 2016**
             **CV 16-05666 SJO (SKx)**

II.      DISCUSSION

         A.      Consolidation of Related Actions

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may:  (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  Moreover, the PSLRA requires that related cases be consolidated prior to the appointment of a lead plaintiff.  15 U.S.C. § 7u-4(a)(3)(B)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered.").  Class action shareholder suits are "particularly well suited to consolidation" because their "unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved."  *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV_05368-LHK, 2014 WL 2604991, at \*3 (N.D. Cal. June 10, 2014) (citing *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)).  Courts have broad discretion under to consolidate cases pending within their Districts.  *See Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 877 F.2d 777 (9th Cir. 1989).

Here, both the instant action and the *Dorce* action present substantially similar factual and legal issues, are brought against the same Defendants, arise from the same alleged scheme, and allege violations of the same federal securities laws.  Consolidation of these related actions is therefore appropriate under Rule 42(a) and the PSLRA.

         B.      Appointment of Lead Plaintiff

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interest of the class members. . . ."  15 U.S.C. §78u-4(a)(3)(B)(i).  Individuals seeking to be appointed lead plaintiff in a securities class action must satisfy the early notice requirement of the PSLRA by providing notice to class members via publication in a widely circulated national business-oriented publication or wire service within 20 days of filing the complaint.  15 U.S.C. §78u-4(a)(3)(A)(I).  The notice must:  (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within 60 days of the date on which notice was published, any members of the purported class may move the court to serve as lead plaintiff in the purported class.  15 U.S.C. §78u-4(a)(3)(A)(i)(I)-(II).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 16-05519 SJO (SKx)**          **DATE:** **October 26, 2016**
                   **CV 16-05666 SJO (SKx)**

A proposed lead plaintiff must also submit a sworn certification stating that he or she has reviewed the complaint, did not purchase the security at the direction of counsel for purposes of participating in a private action, is willing to serve as a representative on behalf of the class, and will not accept any payment for serving as a class representative beyond his or her pro rata share of the recovery. 15 U.S.C. § 78u-4(a)(2)(A). Furthermore, the sworn certification must also set forth all of the proposed lead plaintiff's transactions in the security during the class period, and identify any other securities class action during the past three years in which the individual has sought to serve as a class representative. *Id.*

Interpreting these statutes, the Ninth Circuit has held that the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 729-30 (internal citations omitted). Finally, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730. The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id.* at 732.

      1.      Procedural Requirements

This action was filed on July 25, 2016. (*See* Compl.) Notice of the pendency of this action was published in *Business Wire* the same day by the law firm Glancy Prongay & Murray. (*See* Decl. Robert V. Prongay in Supp. Callendar Mot. ("Prongay Decl."), Ex. A, ECF No. 19.) This notice was timely because it was published within 20 days after the filing of the complaint, it lists the claims and the class period, it and advises putative class members that they had sixty (60) days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(A). Each movant filed his or their respective motions within this sixty-day period, as required by 15 U.S.C. § 78u-4(a)(3)(A), and therefore each movant has met the statutory procedural requirements.

      2.      Presumptive Lead Plaintiff

Each of the movants initially believed he (or they) have the largest financial interest in the outcome of this litigation. (*See* Callendar Mot. 7, ECF No. 16; Saleh Mot. 8, ECF No. 18; Feldman Mot. 4-5, ECF No. 23; Investor Mot. 5-6, ECF No. 27.) Mr. Callendar avers he suffered approximately **$1,144,164.20** in losses during the Class Period. (Prongay Decl., Ex. C.) Mr. Saleh avers he suffered a loss of **$122,338.59** during the Class Period. (Decl. Adam C. McCall in Supp. Saleh

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **CV 16-05519 SJO (SKx)**          DATE:   <u>**October 26, 2016**</u>
                 **CV 16-05666 SJO (SKx)**

Mot. ("McCall Decl."), Ex. B, ECF No. 22.)  Mr. Feldman avers he suffered just over **$539,000** in losses during this same period.  (Decl. Denielle S. Myers in Supp. Feldman Mot. ("Myers Decl."), Ex. C, ECF No. 25.)  Finally, the CytRx Investor Group avers its six (6) members **collectively** lost **$1,479,572** during the Class Period.  (Decl. Laurence M. Rosen in Supp. Investor Mot. ("Rosen Decl."), Ex. 3, ECF No. 29.)  After reviewing the other Motions, it has become clear to the movants that Mr. Callendar has suffered the largest individual loss traceable to the alleged fraud at issue, while the CytRx Investor Group—an admittedly "small group[ ] of unrelated investors," (Investor Opp'n 3, ECF No. 34)—has suffered the largest aggregate loss, (*see generally* Callendar Opp'n, ECF No. 35; Feldman Opp'n, ECF No. 33; Investor Opp'n).  Given the PSLRA specifically provides for the possibility that a "group of persons" may be appointed as the lead plaintiff, the question the Court must answer is whether the six-member CytRx Investor Group is both small and cohesive enough to "engage in coordinated decision-making" and to "effectively manage the litigation and direct lead counsel." *Ferrari v. Gisch*, 225 F.R.D. 599, 608-09 (C.D. Cal. 2004).

a.      <u>The CytRx Investor Group</u>

Here, the CytRx Investor Group initially submitted that although it is composed of unrelated investors,[2] because there are only six (6) such investors and because they have signed a Joint Declaration averring their intention (1) to monitor the action; (2) to actively oversee the prosecution of the action; and (3) to direct counsel with respect to the litigation, (*see generally* Joint Decl.), they are a cohesive group whose losses can be aggregated and which satisfies the typicality and adequacy prongs of Rule 23, (Investor Opp'n 3-4).  The Joint Declaration, totaling ten paragraphs of which six merely aver the residence and occupation of the members, falls far short of convincing the Court the group is anything but an effort to engage in "lawyer-driven litigation." *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation. . . .  To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.").  Moreover, the CytRx Investor Group in its Notice of Non Opposition, after "having reviewed the lead plaintiff motion papers," indicated it does not oppose Mr. Callendar's Motion.  (Notice of Non Opp'n, ECF No. 37.)

Indeed, "[t]he record in this case suggests that [the CytRx Investor Group] was created in an effort to have its members designated as lead plaintiffs and, more important, its counsel designated as class counsel." *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002).  "There is no apparent relationship between the [investors] who comprise the [CytRx Investor Group]." *Id.*  Moreover, the CytRx Investor Group "does not explain why it must be

---

[2]  Whether Mr. Nguyen and Ms. Phan are related does not materially impact the Court's analysis.  (Decl. J. Alexander Hood in Supp. Investor Opp'n ("Hood Decl."), Ex. A ("Joint Decl.") ¶¶ 4-5.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:    CV 16-05519 SJO (SKx)          DATE:   October 26, 2016**
**CV 16-05666 SJO (SKx)**

represented by two firms, each of which appears independently capable of prosecuting this action."[3]  *Id.*  "Nor does the record contain any credible explanation for the group's creation," with the Joint Declaration merely averring "the members . . . recognize that they are all like-minded investors that suffered substantial losses in their investments in CytRx securities" and that they "participated in a conference call to discuss" a number of issues.  (Joint Decl. ¶¶ 8-9.)  The Joint Declaration further "fail[s] to detail any procedures by which [the CytRx Investor Group] would 'provide for efficient prosecution of the action,' conduct meetings, or participate in the discovery process given that its members and attorneys were scattered throughout the [United States and Canada]." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *24-*25 (C.D. Cal. May 1, 2006).

Perhaps the most troubling aspect of the Joint Declaration, however, is its failure to describe how the six members of the CytRx Investor Group—who reside in Michigan, Illinois, California, Massachusetts, and Vancouver, (*see* Joint Decl. ¶¶ 2-6)—came to know of each others' existence, strengthening the inference that each was recruited by counsel.  As early as 1999, "[t]he SEC expressed concern at placing in charge of a securities class action lawsuit a group of investors 'who were previously unaffiliated, each of whom have suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation.'"  *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1025-26 (N.D. Cal. 1999) (quoting *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 225 (D.D.C. 1999)).  The SEC further argued "[t]he problem is made worse if the members have been recruited by counsel," for "such an assemblage will be unable to manage the litigation and control the lawyers.  The net result will be that, while the 'group' nominally has a large stake in the litigation, the lawyers will dominate the decisionmaking." *In re Baan*, 186 F.R.D. at 225.  The Court takes these concerns to heart, and agrees with the courts that "have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *In re Gemstar*, 209 F.R.D. at 451 (collecting cases).

        b.    <u>Mr. Callendar</u>

The Court now examines whether Mr. Callendar, "who has the largest financial interest in the relief sought by the class . . . otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Cavanaugh*, 306 F.3d at 729-30.  After identifying the plaintiff or plaintiffs with the largest financial stake in the litigation,

---

[3]  The CytRx Investor Group has submitted evidence that Mr. Diamantopoulos "retain[ed] the Rosen Law Firm, P.A. to proceed" on his behalf.  (Rosen Decl., Ex. 2 at 3.)  No information has been provided to the Court indicating whether the remaining members retained the Rosen Law Firm, Pomerantz LLP, or both.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 16-05519 SJO (SKx)**          **DATE:   October 26, 2016**
**CV 16-05666 SJO (SKx)**

further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.  That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence.  So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

*Id.* at 732.  The plaintiff or plaintiffs with the largest stake in the litigation need only make a "prima facie" showing of adequacy and typicality.  *Id.* at 730-31.

i.        Typicality

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [Lead Plaintiff or Lead Plaintiffs] have incentives that align with those of absent class members so  . . . that the absentees' interests will be fairly represented."  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999).  As a result, the representative claims need only be "reasonably co-extensive" with those of absent class members, rather than "substantially identical" to them.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  This is measured by assessing whether the proposed lead plaintiff has markedly different individual circumstances or bases his claim on a different legal theory than is available to other class members.  *Takeda*, 67 F. Supp. 2d at 1136-37 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994)).

Here, Mr. Callendar avers he, like other members of the putative class, acquired CytRx securities at artificially inflated prices due to material misrepresentations and omissions in public statements disseminated by CytRx and its senior management, and was damaged when the truth was revealed to the market.  (Callendar Mot. 7-8; Prongay Decl., Exs. B, C.)  Mr. Callendar therefore appears to be a typical class member at this stage.

ii.        Adequacy

"[R]epresentation is 'adequate' when the representative's interests are not antagonistic to the interests of absent class members, it is unlikely that the action is collusive, and counsel for the class is qualified and competent."  *Ferrari*, 225 F.R.D. at 606 (C.D. Cal. 2004).  There is no evidence that Mr. Callendar's interests diverge from those of the remaining putative class members. (*See generally* Prongay Decl.)  Moreover, Mr. Callendar, who appears to have suffered the greatest individual loss, has declared his willingness to serve as a class representative in this action, suggesting a motivation to vigorously prosecute this action on behalf of absent class members.  (Prongay Decl., Ex. B.)  Finally, Mr. Callendar's proposed counsel has extensive experience prosecuting securities class action litigations.  (Prongay Decl., Ex. D.)  The Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   **CV 16-05519 SJO (SKx)**          **DATE:**   **October 26, 2016**
**CV 16-05666 SJO (SKx)**

therefore finds that Mr. Callendar has made a *prima facie* showing that he would serve as an adequate class representative.

iii.      Rebuttal of Presumptive Lead Plaintiff

None of the other movants have offered evidence or argument rebutting Mr. Callendar's *prima facie* showings as to typicality or adequacy. (*See, e.g.*, Notice of Non Opposition; Feldman Reply, ECF No. 38.)

3.      Lead Counsel

Finally, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The decision of lead counsel belongs to the lead plaintiff.  *In re Cavanaugh*, 306 F.3d at 734 n. 14. None of the other movants have introduced evidence or argument as to why the appointment of a law firm other than Glancy Prognay & Murray would be "necessary to protect the interests of the class." *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  Accordingly, the Court finds no reason to disturb Mr. Callendar's decision to retain the law firm Glancy Prongay & Murray LLP to pursue this litigation on his behalf or his intention to retain Glancy Prongay & Murray LLP as plaintiff's lead counsel in the event he is appointed lead plaintiff.

III.      RULING

For the foregoing reasons, the Court

1.      (a) **GRANTS** Movant Gregory D. Callendar's Motion for Consolidation of the Related Cases, Appointment as Lead Plaintiff and Approval of Counsel; (b) **DENIES** Movant Bahjat Saleh's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel; (c) **DENIES** Movant Brad S. Feldman's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel; and (d) **DENIES** Movants Harry Diamantopoulos, Kostas Restinas, David Nguyen, Ryan Bird, Sarah Phan, and John Corbitt's Motion to Consolidate Related Actions, for Appointment as Lead Plaintiffs and Approval of Choice of Counsel;

2.      **CONSOLIDATES** Case Nos. 16-cv-005519-SJO-SK and 16-cv-05666-SJO-SK as *In re CytRx Corporation Securities Litigation*, Master File No. 16-cv-05519-SJO-SK pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

3.      **APPOINTS** Gregory D. Callendar to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the above-captioned actions; and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 16-05519 SJO (SKx)**       **DATE:**  **October 26, 2016**
              **CV 16-05666 SJO (SKx)**

4.      **APPROVES** Gregory D. Callendar's selection of lead counsel and **APPOINTS** the law firm Glancy Prongay & Murray LLP as Lead Counsel for the putative class in the above-captioned actions.

IT IS SO ORDERED.